IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| QUINTINE FIELDS, | § | |
| Institutional ID No. 3593619 | § | |
| Other ID Nos. 16067596, 3571657, | § | |
| P-153, 156, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 5:22-CV-128-BQ |
| v. | § | |
| | § | |
| LAMESA POLICE DEPARTMENT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND**
**RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis*, Plaintiff Quintine Fields filed this action under

42 U.S.C. § 1983, claiming violations of his constitutional rights during an April 29, 2021

interaction with the Lamesa Police Department (LPD). Am. Compl. 4, ECF No. 7; *see* ECF No.

1. The United States District Judge transferred this case to the undersigned United States

Magistrate Judge for further proceedings. ECF No. 12. The undersigned thereafter reviewed

Fields's Amended Complaint, as well as authenticated records from LPD, and held an evidentiary

hearing on January 12, 2023, in accordance with *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th

Cir. 1985). ECF Nos. 23, 24.

Not all parties have consented to proceed before the undersigned magistrate judge. In

accordance with the order of transfer, the undersigned makes the following findings and

conclusions and recommends that the district judge order the filing of an answer or other pleading

as to Fields's Fourth Amendment claim against LPD Officer Ward in his individual capacity. As

to the remaining claims, the undersigned recommends that the district judge dismiss them with

prejudice, excepting Fields's claim for illegal search and seizure, which should be dismissed with prejudice until the conditions of *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) are met.

## I.    Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements

2

of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.    Discussion

### A. Fields's Allegations and the Authenticated Records

Fields asserts claims against LPD and Officer Ward. Am. Compl. 1, 3, 4; Tr. 2:05:36–:06:35.[1] Fields alleges that on April 29, 2021, Officer Ward[2] was called to Fields's apartment complex due to a 9-1-1 call that reported he was breaking windows. Tr. 2:06:36–:09:41; *see* Am. Compl. 4. When Officer Ward arrived, Fields was bleeding from his arm or wrist area as a result of punching his apartment window. Tr. 2:08:30–:09:41. Fields acknowledges that Officer Ward ordered Fields to get on the ground, but instead of complying Fields told Ward that (1) he was bleeding, (2) could not get on the ground, and (3) needed help. Tr. 2:10:52–11:35. Fields claims he then turned around with his hands in the air, at which point Officer Ward tased Fields in the back twice with a drive stun.[3] Tr. 2:10:52–11:25, 2:12:02–:17:15; *see* Am. Compl. 4; Video 0:00–:08.[4] The video footage reflects that as Officer Ward tased Fields the second time, he ordered Fields to get on the ground. Video 0:00–:08.

---

[1] Citations to the January 12, 2023 *Spears* hearing audio recording are reflected as "Tr."

[2] The authenticated records reflect that Sergeant Michael Thornton was involved in the incident of which Fields complains. At the *Spears* hearing, however, Fields denied that Thornton was involved, insisting that he knew the officer's name was "Ward" because Fields had had previous encounters with him. Tr. 2:06:36–:08:22. Thus, the Court refers to Defendant by the surname reflected in Fields's Amended Complaint.

[3] Hand-held taser applied directly against the body, in contrast to a taser gun that fires probes with attached wires.

[4] The authenticated records contain a video clip of the April 29 incident that appears to be taken from a bystander's cellphone. At the *Spears* hearing, Fields confirmed that his neighbor took the video. *See* Tr. 2:43:47–:48:00. The Court refers to this footage as "Video."

Fields explains he then turned to face Officer Ward and told him "I'm not resisting," and Ward again ordered Fields to get on the ground.[5]  Tr. 2:10:52–11:35, 2:12:02–:17:15.  Fields asserts that immediately thereafter Officer Ward deployed his taser, with the probes hitting Fields in the chest.  Tr. 2:10:52–11:25, 2:12:02–:17:15; *see* Am. Compl. 4.  But the video clearly contradicts Fields's allegation in this regard.  The video footage reflects that after Fields faced Officer Ward, the following exchange took place:

Ward:  "Get on the ground."

Fields:  "My hands is up."

Ward:  "Get on the ground."

Fields:  "My hands is up."

Ward:  "Get on the ground."

Fields:  "My hands is up."

Ward:  "One . . ."

Fields:  "Two, three!"

Video 0:10–:18.[6]  After finishing Officer Ward's count, Fields put his hands at his side and stood stiffly, as if to brace himself for (or to invite) Officer Ward's tasing.  Video 0:17–:19.  Officer Ward then deployed his taser and the probes hit Fields in the chest.  Video 0:18–:27; *see* Tr. 2:10:52–11:35.

Fields fell to the ground (Video 0:18–:27), and Fields alleges Officer Ward continued tasing him.  Tr. 2:10:52–17:25.  The video shows that after he fell, Officer Ward immediately kneeled by Fields, who was face down, and told Fields to stay on the ground.  Video 0:18–:27.

---

[5] The video confirms that Officer Ward did order Fields to get on the ground, but the Court cannot clearly discern whether Fields told Ward that he was not resisting.  Video 0:00–:12.

[6] With each repetition of "my hands is up" Fields's voice increased in volume and emphasis.  Video 0:10–:18.

Fields avers that Officer Ward then ceased tasing him, got on top of him, and handcuffed him. Tr. 2:10:52–17:25. The Court asked Fields to specify the harm he suffered as a result of Officer Ward's purported use of force, to which Fields responded, "Well, besides me being tased with my hands up when I wasn't resisting, uh, since then I got a lot of PTSD" and "[my body] would shut down." Tr. 2:18:52–:20:02; *see* Tr. 2:42:43–:43:29 (stating that at the hospital, medical staff pulled the prongs out of his chest but he did not require stitches or any other specific treatment for the tasing).

According to Fields, Officer Ward handcuffed Fields and left him sitting on the ground in the rain for approximately thirty to forty minutes while Ward searched Fields's apartment. Tr. 2:12:02–:18:51. After thirty to forty minutes, Fields alleges that he lost consciousness and EMS arrived shortly thereafter. Tr. 2:17:17–:17:50; *see* Am. Compl. 4. These allegations are contradicted by dash camera (dash cam) footage. The Court therefore re-constructs Fields's factual assertions concerning the medical care claim to reflect a timeline consisting of his allegations *except* where clearly contradicted by video evidence.

A dash camera video included in the authenticated records shows that upon a second officer's arrival, Fields lay face down and Officer Ward was kneeling over Fields with a taser still in his left hand. Dash Cam 02:06–:16.[7] Officer Ward held Fields's left arm behind his back. *Id.* The officer exited the vehicle equipped with a dash cam and went to assist Officer Ward. 02:16–:32. Fields alleges, and the video shows, a female officer also reached the scene. Dash Cam 02:06–:32. Fields was not handcuffed when the other officers arrived. Dash Cam 02:31–03:10. The second officer (male) applied handcuffs, and additional officers rolled Fields over and assisted him into a sitting position. Dash Cam 02:54–03:36. A Texas Department of Public Safety (DPS)

---

[7] The video is contained on DVR 19-04, disc 3 (I-21-04-0068).

officer also arrived. Dash Cam 03:34–03:40. No less than four officers stayed with Fields, who remained sitting on the ground, until EMS arrived approximately four minutes later. Dash Cam 03:34–07:28. During this time, Fields is continuously moving and the officers appear to speak with him. *Id.* At one point, Officer Ward adjusts the tourniquet on Fields's right arm. Dash Cam 04:53–05:41.

The female LPD officer and the DPS officer then helped Fields to his feet and guided him toward the ambulance, where emergency personnel took over. Dash Cam 07:42–08:40. Until Fields entered the ambulance, Officer Ward stayed by Fields and did not leave the view of the dash cam. 02:06–08:40. After about twenty minutes, the ambulance left with Fields. Dash Cam 07:28–29:50.

At the *Spears* hearing, Fields alleged that approximately ten minutes after the female LPD officer "came on the scene," EMS arrived.[8] Tr. 2:21:30–:22:47. This assertion generally aligns with the video evidence—EMS arrived approximately five minutes after the female officer. Dash Cam 02:32–07:28. Because the contention that Officer Ward failed to obtain medical treatment for forty minutes while Ward search Fields's apartment is clearly contradicted by both Fields's *Spears* timeline and the video evidence, the Court disregards it. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that the district court did not have to accept the plaintiff's description of his driving where it was "blatantly contradicted by" video from the police car's dash cam).

Regardless of the timing, Fields maintains that after handcuffing him, Officer Ward illegally search his apartment and seized contraband. Tr. 2:17:17–:18:51, 2:29:15–:33:13; *see* Am. Compl. 3–4. Fields also asserts that Officer Ward included false statements in his police report about his search of Fields's apartment. Tr. 2:33:13–:43:29; *see* Am. Compl. 3–4. As a result of

---

[8] Fields avers that the female officer is "the reason why [he] made it to the hospital in time" and did not bleed out. Tr. 2:21:30–:22:47.

the contraband Officer Ward purportedly seized from Fields's apartment, Fields was criminally charged with, and ultimately pleaded guilty to, manufacture or delivery of a controlled substance (methamphetamine) in penalty group 1, four grams but less than 200 grams. Tr. 2:29:15–:33:13.

Based on these factual allegations, Fields makes the following claims against Officer Ward: (1) excessive use of force based on the tasings; (2) denial of timely medical care; (3) illegal search and seizure; (4) falsification of police report; and (5) attack on his character. *See* Am. Compl. 3–4; Tr. 2:05:36–:06:35. Fields seeks monetary damages.[9] Am. Compl. 4.

### B. The Lamesa Police Department lacks the capacity to be sued.

Fields names LPD as a Defendant. Am. Compl. 1, 3–4; 2:05:36–:06:35. Because LPD is a non-jural entity, Fields cannot state a cognizable claim against it.

"Federal courts in Texas have uniformly held that entities without a separate jural existence are not subject to suit." *Torti v. Hughes*, No. 3:07-CV-1476-M, 2007 WL 4403983, at *2 (N.D. Tex. Dec. 17, 2007) (citing cases for support); *see Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (quoting *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991)) ("In Texas, county sheriff's and police departments generally are not legal entities capable of being sued, absent express action by the superior corporation (the county, in the case of the sheriff's department) 'to grant the servient agency with jural authority.'"). Fields has not pleaded any facts demonstrating a grant of jural authority to LPD. Am. Compl. 1, 3–4; Tr. 2:05:36–:06:35. On this basis alone, the Court should dismiss LPD. *See, e.g.*, *Mooring v. Paine*, No. 5:21-CV-028-BQ, 2021 WL 7278958, at *14 (N.D. Tex. Oct. 29, 2021) (dismissing Lubbock Police Department because it is a non-jural entity); *Williams v. Dall. Police Officer*, No. 3:19-CV-

---

[9] Fields also sought dismissal of his criminal charges and unspecified "mandamus relief." Am. Compl. 4. Before transferring the case, however, the district judge denied that relief while "retain[ing] jurisdiction over [Fields's] request for monetary damages." ECF No. 12, at 1; *see id.* at 1–4.

3046-B-BH, 2021 WL 4552281, at *4 (N.D. Tex. Oct. 5, 2021) (explaining that "[a] city police department is not a jural entity subject to suit" and therefore dismissing Irving Police Department); *see also Darby*, 939 F.2d at 313 (quoting *Mayes v. Elrod*, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979)) (stating that a political subdivision such as a police department only has the capacity to be sued if it "enjoy[s] a separate legal existence").

In addition, the Court observes that LPD cannot be liable for the actions of its employees, e.g., those working in the department, because 42 U.S.C. § 1983 does not impose vicarious liability. *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988). The undersigned therefore recommends the district judge dismiss as frivolous and with prejudice any claim against LPD.

### C. Fields's Fourth Amendment illegal search and seizure claim is *Heck*-barred.

Fields alleges that Officer Ward searched his apartment and seized contraband in violation of the Fourth Amendment. *See* Am. Compl. 3–4; Tr. 2:29:15–33:13. In Fields's view, Officer Ward had no basis to enter his apartment because Ward was answering a domestic violence call and there was no one else in his apartment—the reason Officer Ward allegedly gave for the search.[10] Tr. 2:29:15–33:13. As a result of the search and seizure, Fields avers Officer Ward found narcotics in Fields's apartment. *Id.* Fields acknowledges, and the authenticated records confirm, that as a result of that discovery, Fields was criminally charged with manufacture or delivery of a controlled substance (methamphetamine) in penalty group 1, four grams or more but less than 200 grams. *Id.*; *see* TEX. HEALTH & SAFETY CODE § 481.112(d). Fields pleaded guilty to that charge. Tr. 2:29:15–33:13.

---

[10] The authenticated records indicate that officers began photographing the damage Fields caused (i.e., the broken apartment window), and upon seeing an open, broken door and a blood trail, an officer (not Ward) followed the trail to ensure there were no other victims, leading to the discovery of contraband.

In *Heck v. Humphrey*, the United States Supreme Court held that a plaintiff seeking to recover damages for harm "caused by actions whose unlawfulness would render a conviction or sentence invalid" must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486–87 (1994) (citation omitted). Where a favorable judgment in the civil rights action would "necessarily imply the invalidity of [a prisoner's] conviction or sentence" in his criminal case, the civil claim is barred unless the criminal conviction has been reversed or otherwise declared invalid. *Id.* at 487.

Here, a favorable judgment as to the illegal search and seizure claim would necessarily call into question the validity of Fields's criminal conviction for manufacture or delivery of a controlled substance. Based on the facts alleged, Fields's assertion that Officer Ward illegally entered his apartment, searched, and seized narcotics directly undermines the validity of Fields's conviction for manufacture or delivery.[11] *See, e.g.*, *Shipman v. Sowell*, 766 F. App'x 20, 28 (5th Cir. 2019) (holding plaintiff's Fourth Amendment unlawful seizure claim was *Heck*-barred, where his criminal conviction was "inextricably intertwined with his claim that the [officers] lacked probable cause to raid his" business); *Blimline*, 757 F. App'x at 302 (explaining that a plaintiff's Fourth Amendment claim "is *Heck*-barred if evidence that was a direct or indirect product of the alleged unlawful search and seizure was presented in the plaintiff's criminal conviction

---

[11] Fields pleads no facts suggesting that "the illegally obtained evidence is admissible under the independent source or inevitable discovery doctrine, or [that] the evidence's admission [was] . . . harmless," such that *Heck* might not bar the claim. *Blimline v. Thirty Unknown Emps. of the Sec. & Exch. Comm'n*, 757 F. App'x 299, 302 (5th Cir. 2018) (per curiam); *see Foreman v. Dick*, No. 22-0467-ILRL-JVM, 2022 WL 17256859, at *5 (M.D. La. Oct. 31, 2022) (recommending dismissal of plaintiff's Fourth Amendment illegal search and seizure claim in part "because [plaintiff] [did] not indicate that a legal doctrine such as independent source, inevitable discovery, or harmless error would make a victory on her illegal search and seizure claims compatible with a valid conviction"), *R. & R. adopted by* 2022 WL 17254312 (M.D. La. Nov. 28, 2022).

proceeding"); *Johnson v. Bradford*, 72 F. App'x 98, 99 (5th Cir. 2003) (per curiam) ("There is no merit to [plaintiff's] contention that his Fourth Amendment claims relating to the search of his apartment and seizure of cocaine are not barred by *Heck* . . . ."); *Russell v. Strickland*, No. 2:19-cv-39-TBM-MTP, 2021 WL 4047454, at *2–3 (S.D. Miss. Apr. 15, 2021) (concluding plaintiff's claim that defendants illegally searched and seized evidence leading "to his conviction of possession of marijuana" was barred by *Heck* because "[p]laintiff's conviction was based on the marijuana seized during the search"), *R. & R. adopted by* 2021 WL 4046401 (S.D. Miss. Sept. 3, 2021); *Porter v. Richardson*, No. 2:04-CV-0321, 2006 WL 740992, at *3 (N.D. Tex. Mar. 13, 2006) (finding as *Heck*-barred plaintiff's claim that defendant "lacked probable cause to conduct [a] warrantless search of plaintiff's vehicle," where plaintiff was serving a "sentence for possession of a controlled substance" based on the fruits of that search).

Fields pleads no facts showing that his conviction has been overturned or otherwise invalidated. *See* Am. Compl. 3–4; Tr. 2:29:15–:33:13. The Court therefore recommends that the district judge dismiss as frivolous and with prejudice Fields's Fourth Amendment claim until the condition of *Heck* are met. *See Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996) ("A § 1983 claim which falls under the rule in *Heck* is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question.").

### D. Fields has failed to plead facts supporting a viable constitutional claim based on an alleged false police report and attacks on his character.

Fields asserts that Officer Ward included false statements in his post-incident police report, including that: (1) Ward saw Fields's daughter in the apartment; (2) Fields resisted arrest; (3) Ward tried to provide medical assistance by supplying or applying a tourniquet to stop the bleeding from Fields's arm/wrist; and (4) Fields told his girlfriend/wife that he was going to beat her to death. Tr. 2:33:13–:40:35. These false statements, Fields contends, resulted in (1) the

criminal charge to which he pleaded guilty, (2) defamation of his character,[12] and (3) his inability
to obtain a job in Lamesa, Texas. *Id.*

Initially, the Court observes that Fields does not attribute any physical injury to Officer
Ward's purportedly false statements in the police report. Under the Prison Litigation Reform Act
(PLRA), "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury
suffered while in custody without a prior showing of physical injury or the commission of a sexual
act." 42 U.S.C. § 1997e(e). The Fifth Circuit has held that this requirement "applies to all federal
civil actions in which a prisoner alleges a constitutional violation." *Geiger*, 404 F.3d at 375. The
application of § 1997e(e) is based on "the relief sought, and not the underlying substantive
violation." *Id.*; *see Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 605 (5th Cir. 2008) ("We
have held that the application of [§ 1997e(e)] turns on the relief sought by a prisoner, and that it
prevents prisoners from seeking compensatory damages for violations of federal law where no
physical injury is alleged."). Because Fields alleges no physical injury, any claim for
compensatory damages is subject to dismissal. *See* Am. Compl. 4 (asking "to be compeisated [sic]
for [his] Civil Rights being violated"); *Alexander v. Tippah Cnty.*, 351 F.3d 626, 631 (5th Cir.
2003) (per curiam) (affirming dismissal of prisoners' conditions-of-confinement claims, where
they alleged either no or *de minimis* physical injury); *Duncan v. Quarterman*, No. 2:09–CV–0187,
2009 WL 2614395, at *2 (N.D. Tex. Aug. 26, 2009) (recommending dismissal of plaintiff's claim
for compensatory damages based on alleged mental anguish and defamation of character because
he failed to assert an accompanying physical injury).

---

[12] In his Amended Complaint Fields makes a claim of "attacks of character" (Am. Compl. 3), but at the *Spears* hearing
Fields alleged that Officer Ward defamed his character. Tr. 2:33:13–:40:35. The Court therefore liberally construes
Fields's allegation as raising a constitutional defamation claim.

Even examining the merits of Fields's claims, however, the undersigned concludes that they fail. Standing alone, "there is no [constitutional] right to a completely accurate police report." *Smith v. Patri*, 99 F. App'x 497, 498 (5th Cir. 2004) (per curiam); *see Rich v. Pallo*, 920 F.3d 288, 298 n.18 (5th Cir. 2019) (referencing *Smith* and observing "[o]ther circuits have also recognized that false or inaccurate police reports do not pose a constitutional violation" (citing *Jarrett v. Twp. of Bensalem*, 312 F. App'x 505, 507 (3d Cir. 2009)). Moreover, Fields has not demonstrated how the false statements he identified led to his conviction for a drug offense. *See* Tr. 2:33:13–:40:35. Other than his ultimate conviction, Fields pleads no facts indicating that the purportedly false statements resulted in any consequence implicating a constitutional right.[13] *See, e.g.*, *Vega v. Gusman*, No. 20-1931, 2021 WL 1967494, at *5 (E.D. La. May 17, 2021) (dismissing plaintiff's claim that defendant authored a false police report, where plaintiff pleaded no facts showing the allegedly false statements caused a constitutional harm); *Dudley v. Bexar Cnty.*, No. 5:12–CV–357–DAE, 2014 WL 6979542, at *7–8 (W.D. Tex. Dec. 9, 2014) (relying on reasoning of the First and Seventh Circuits (because Fifth Circuit has not "definitely ruled") "that the filing of a false police report does not give rise to a § 1983 action unless the false report results in some constitutional injury, such as a deprivation of life, liberty, or property," and thus dismissing plaintiffs' false-reports claim because they "identified no constitutional harm, nor presented any evidence, that they . . . suffered as a result of the allegedly false police report").

To the extent Fields raises a defamation claim, it similarly fails. "Damage to an individual's reputation as a result of defamatory statements made by a state actor, accompanied by

---

[13] The authenticated records do indicate that an LPD officer presented a charge to the district attorney for abandoning or endangering a child, thus placing the child in imminent danger. *See* TEX. PENAL CODE § 22.041(e). Apparently, Texas Child Protective Services (CPS) also initiated an investigation. The outcome of that criminal charge and the CPS investigation, however, are unclear from the records. Regardless, the Court provided Fields the opportunity to explain how he was harmed by the allegedly false statements in Officer Ward's report, and he did not indicate he suffered a constitutional consequence other than the criminal charge to which he pleaded guilty. Tr. 2:33:13–:40:35.

an infringement of some other interest, is actionable under § 1983" if a plaintiff satisfies the "stigma-plus-infringement" test. *Cormier v. Lafayette City-Par. Consol. Gov't*, 493 F. App'x 578, 584 (5th Cir. 2012) (per curiam) (alteration omitted) (quoting *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995) (per curiam)). "The necessary stigma consists of 'concrete, false factual assertions'; infringement occurs if the state 'sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law' or the federal constitution as incorporated against the states." *Tebo v. Tebo*, 550 F.3d 492, 503 (5th Cir. 2008) (quoting *Thompson*, 70 F.3d at 392).

Assuming Fields sufficiently identified "concrete, false factual assertions" (*id.* (citation omitted)), he has not demonstrated that any stigma deprived him of a life, liberty, or property interest. As noted above, Fields pleads no facts showing how the allegedly false statements resulted in his criminal conviction. And Fields does not contend that he was fired from his job but instead maintains he was unable to obtain a job because of the purported statements. Tr. 2:33:13– :40:35. The alleged loss of a future opportunity does not satisfy the stigma plus test. *See Does 1-7 v. Abbott*, 945 F.3d 307, 313 (5th Cir. 2019) (per curiam) (explaining that "the consequent impairment of future employment opportunities" is not a "constitutionally cognizable injur[y]" (citation omitted)); *Thinkstream, Inc. v. Adams*, 251 F. App'x 282, 284 (5th Cir. 2007) (per curiam) (stating that "the loss of *future* employment opportunities does not typically qualify as [a] . . . tangible interest" (internal quotation marks and citation omitted)); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701–02 (5th Cir. 1991) (per curiam) ("To establish the infringement portion of the stigma plus infringement test, a claimant must establish that the state sought to *remove* or *significantly alter* a life, liberty, or property interest recognized and protected by state law . . . ." (emphasis added) (internal quotation marks and citation omitted)).

For these reasons, the undersigned recommends that the district judge dismiss Fields's § 1983 false report and defamation claims.

### E. Fields has not pleaded adequate facts supporting a viable claim based on Officer Ward's alleged delay in obtaining medical care.

The Constitution requires that prison officials provide adequate medical care.[14] *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish a constitutional violation in regard to medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991))). Deliberate indifference "is an extremely high standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (per curiam) (internal quotation marks and citation omitted)) and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, an official acts with deliberate indifference only where he (1) "knows [the] inmate[] face[s] a substantial risk of serious harm" and (2) "disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Gobert*, 463 F.3d at 346; *see also Harris v. Hegmann*, 198

---

[14] Because Fields was an arrestee at the time of his claim, his rights derive from the Fourteenth Amendment, not the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (stating that pretrial detainee's rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment"). Nevertheless, the standard for deliberate indifference to serious medical needs is essentially the same for both pretrial detainees and post-conviction prisoners; thus, cases applying the Eighth Amendment are still relevant to the Court's analysis.

F.3d 153, 159 (5th Cir. 1999) (per curiam) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (alterations and internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 838). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Fields alleges that Officer Ward delayed obtaining medical care for forty minutes. *See* Am. Compl. 3–4; Tr. 2:20:07–:29:15. As discussed in Section II.A *supra*, however, the video footage reflects that EMS arrived approximately four minutes after the officers cuffed Fields and assisted him into a sitting position.[15] *See* Dash Cam 03:36–7:27.

Nevertheless, the Court liberally construes Fields's allegation as a claim for delayed medical treatment. To successfully assert a claim based on a delay in care, a plaintiff must show that the defendant was deliberately indifferent *and* that he suffered substantial harm as a result of the delay. *See Mendoza*, 989 F.2d at 195 (stating that a "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm"). First, Fields pleads no facts demonstrating that the short delay in care was a result of Officer Ward's deliberate indifference. *See Fuller v. Harris Cnty.*, 294 F. App'x 167, 169 (5th Cir. 2008) (per curiam) (affirming dismissal of prisoner's deliberate indifference claim at summary judgment, where "record contain[ed] no evidence that the delay was the result of deliberate indifference"). Fields concedes that he is not certain which officer called for an ambulance.[16] Tr. 2:21:30–:22:47. But Fields does not aver that EMS could have arrived earlier,[17] nor does he allege that the delay caused pain that could have been alleviated sooner. *See Batyukova v. Doege*, 994 F.3d 717, 733 (5th Cir. 2021) (observing plaintiff failed to show that "the delay

---

[15] Because Officer Ward apparently did not utilize a body camera, and the officer who used a dash camera did not arrive until after Ward had tased Fields, there is no continuous footage of the incident—i.e., from the initial tasing to the arrival of EMS. Nevertheless, the Court relies on Fields's alleged order of events, in conjunction with the available video footage, to conclude that Fields's allegation concerning the amount of time that lapsed between being handcuffed and EMS arriving are clearly refuted by the video. *See supra* Section II.A.

[16] Officer Ward's report states that upon arriving and observing "blood spurting from [Fields's] right wrist," Ward radioed dispatch and advised EMS was needed.

[17] Fields contends that instead of tasing him, Officer Ward should have helped Fields. Tr. 2:21:08–:29:15. But Fields does not assert a claim for delay in care based on his initial contact with Officer Ward. *Id.* Instead, Fields's allegation relates to the time period post-tasing and handcuffing. *Id.*; *see* Tr. 2:17:17–:18:51.

between being shot [by defendant] and" EMS arriving actually "increased [plaintiff's] risk of bodily harm or death" or "caused pain," nor did she show EMS "could have arrived any sooner").

Moreover, Fields has not pleaded facts demonstrating he suffered substantial harm. Fields acknowledges that he had a tourniquet on his arm, but asserts as a result of the delay he almost "bled out." Tr. 2:09:42–:10:51, 2:21:08–:29:15. Other than this speculative harm, however, Fields pleads no facts demonstrating he suffered substantial harm. Properly framed, Fields's allegation is that he was bleeding prior to his interaction with Officer Ward, and due to the purported delay in receiving care, he continued bleeding until he received stitches at the hospital. *See* Tr. 2:21:30–:22:47. This is insufficient to constitute substantial harm. *See, e.g.*, *Batyukova*, 994 F.3d at 733 (affirming district court's grant of summary judgment on plaintiff's deliberate indifference claim, holding that plaintiff failed to provide evidence that fifteen-minute delay between defendant shooting plaintiff and EMS's arrival, during which time plaintiff was "left on the ground while bleeding from gunshot wounds," resulted in substantial harm); *Uzomba v. Univ. Health Sys., B.C.A.D.C.*, 558 F. App'x 474, 474 (5th Cir. 2014) (per curiam) (concluding plaintiff did not show substantial harm where "he asserted only general, conclusory damages that *could* result from the delay in medical care" (emphasis added)); *Kilgore v. Martinez*, No. 9:15cv66, 2018 WL 4375136, at *2 (E.D. Tex. Aug. 24, 2018) (recommending dismissal at screening of plaintiff's claim that he "had to wait 23 days for . . . surgery to be performed" in part because plaintiff did "not allege the delay he experienced in receiving surgery caused his injuries to become worse or changed the treatment that was ultimately provided"), *R. & R. adopted by* 2018 WL 4358773 (E.D. Tex. Sept. 12, 2018).

Because Fields has not shown that Officer Ward was deliberately indifferent or that Fields suffered substantial harm as a result of any alleged delay in medical care, the undersigned recommends the district judge dismiss Fields's claim against Officer Ward.

**F. Fields's allegation that Officer Ward used excessive force by tasing him survives preliminary review.**

Fields's use of force claim arises under the Fourth Amendment because he sustained alleged injuries when Officer Ward "seized" him on April 29, 2021. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Today we make explicit what [has been] implicit . . . and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ."); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) (holding that plaintiff asserted a valid Fourth Amendment claim where he alleged defendant maliciously choked him after arresting plaintiff and searching his vehicle, but prior to transporting him to jail). To sufficiently state an excessive force claim, an arrestee must demonstrate that he suffered "(1) an injury, (2) that resulted directly from an officer's use of force, and (3) that the force used was objectively unreasonable." *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021) (internal quotation marks omitted).

"The second and third elements collapse into a single objective-reasonableness inquiry, guided by" a non-exclusive list of considerations known as the *Graham* factors. *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (internal citation omitted); *see Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008) ("The objective reasonableness of the force . . . depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible."). The *Graham* factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

whether he is actively resisting arrest or attempting to evade arrest by flight." *Peña*, 879 F.3d at 619 (quoting *Graham*, 490 U.S. at 396). An arrestee must allege more than de minimis injury to justify an excessive force finding, and the injury "must be evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

Fields alleges that Officer Ward's use of a drive stun and taser constituted excessive force. Tr. 2:06:36–:17:15, 2:18:52–:20:02; Am. Compl. 4. Fields agrees that Officer Ward was dispatched to Fields's apartment based on a 9-1-1 call that Fields was breaking windows. Tr. 2:08:30–:09:41. Further, Fields concedes that when Officer Ward arrived, Fields refused Ward's directive to get on the ground, telling Ward that he was bleeding and could not get down. Tr. 2:10:52–11:35. According to Fields, he then turned his back to Officer Ward with his hands in the air, at which point Ward tased him in the back twice with the drive stun. *Id.*; *see* Video 0:00–:08. As Officer Ward tased Fields the second time, he again ordered Fields to get on the ground. Video 0:00–:08. Fields claims he then turned around to face Officer Ward and told him, "I'm not resisting." Tr. 2:10:52–11:25, 2:12:02–:17:15; *see* Am. Compl. 4.

From there, Fields and Officer Ward engaged in a back-and-forth exchange of "get on the ground" and "my hands is up," with Ward then beginning a count to three. Video 0:10–:18. Fields maintained his hands in the air during this exchange. *Id.* After Officer Ward commanded Fields to get on the ground three times and counted to three, Fields instead lowered his hands to his sides, at which point Officer Ward deployed his taser; the probes hit Fields in the chest, and Fields fell to the ground. Video 0:17–:27. When asked by the Court to specify what harm he suffered as a result of Officer Ward's purported use of force, Fields replied, "Well, besides me being tased with my hands up when I wasn't resisting, uh, since then I got a lot of PTSD" and "[my body] would shut down." Tr. 2:18:52–:20:02; *see* Tr. 2:42:43–:43:29 (stating that at the hospital, medical staff

pulled the prongs out of his chest but he did not require stitches or any other specific treatment for the tasing).

Considering the allegations set forth in Fields's Amended Complaint, Fields's responses at the *Spears* hearing, authenticated records provided by LPD, and applicable law, Officer Ward's conduct may indeed constitute objectively reasonable force, given Fields's behavior and his refusal to comply with commands. Under these circumstances, however, and as directed by existing case law, screening is not the appropriate venue for making a final determination as to excessive force, where the Court must examine the *Graham* factors in the context of and while liberally construing Fields's allegations—e.g., the initial reason for Fields's encounter with Officer Ward, each party's respective conduct that may have escalated or deescalated the situation, the dangers Fields's conduct may have presented to Officer Ward and the public, options available for apprehending Fields other than tasing, etc.[18] *See Garza v. Briones*, 943 F.3d 740, 745 (5th Cir. 2019) ("Excessive force claims are necessarily fact-intensive: What is excessive in one case may be permissible in another." (internal quotation marks and citation omitted)).

For these reasons, the Court finds that the foregoing claim against Officer Ward in his individual capacity survives preliminary review.[19] *See, e.g., Aguirre v. City of San Antonio*, 995

---

[18] This is particularly true where the Court does not have video footage of the incident from the beginning. Although LPD has provided numerous videos, there is no video showing Officer Ward interacting with Fields prior to tasing him. The video the Court does have (the bystander video) begins with Fields having his hands in the air and Fields and/or Officer Ward yelling, with Officer Ward first tasing Fields approximately five seconds later. Video 0:00–:07. Because the video was taken from a distance and the person filming is also shouting, the Court cannot clearly ascertain what occurred during the brief initial interaction between Fields and Officer Ward. *Id.*

[19] Fields does not specify the capacity in which he sues Officer Ward. *See* Am. Compl. 3–4. An official capacity suit generally amounts to a suit against the entity of which the officer is an agent—e.g., a claim against an officer in his official capacity equals a claim against the police department—and therefore constitutes a municipal liability claim. *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 n.55 (1978). Fields pleads no facts giving rise to a municipal liability claim. *See* Am. Compl. 3–4. Thus, the Court understands Fields as raising only an individual capacity claim. Even if Fields intended to assert an official capacity claim against Officer Ward, however, the undersigned would recommend dismissal because it is conclusory. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (per curiam) (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims).

F.3d 395, 402–03, 408–11 (5th Cir. 2021) (reviewing district court's grant of summary judgment based on qualified immunity and evaluating the *Graham* factors in connection with officers' use of force on a "mentally disturbed" individual who "was walking and waving his hands" in the median of a busy highway); *Johnson v. Seagoville Police Dep't*, No. 3:19-cv-2588-D-BN, 2021 WL 2169946, at *5–6 (N.D. Tex. Apr. 22, 2021) (Horan, J.) (recommending plaintiff's excessive force claim survive screening where video depicting use of force did not blatantly contradict the plaintiff's allegations and "conflict[ed] with [his] non-conclusory description of the force used against him"), *R. & R. adopted by* 2021 WL 2168953 (N.D. Tex. May 27, 2021); *Robles v. Aransas Cnty. Sheriff's Dep't*, No. 2:15-CV-495, 2016 WL 4159752, at *6 (S.D. Tex. Aug. 5, 2016) (denying defendant's motion to dismiss excessive force claim, where defendant ordered plaintiff "multiple times to turn around, but [plaintiff] continued to face him and talk to him until [defendant] turned him around and took him to the ground"). Officer Ward should be required to file an answer, motion, or other responsive pleading to the Amended Complaint. The undersigned expresses no opinion as to the lawfulness of Officer Ward's actions by recommending an answer, and nothing in these findings and conclusions constitutes an adverse finding as to his conduct.

### III.    Recommendation

For these reasons, the undersigned recommends that the United States District Judge order the filing of an answer or other pleading as to Fields's Fourth Amendment claim against Lamesa Police Department Officer Ward in his individual capacity. As to the remaining claims, the undersigned recommends that the United States District Judge dismiss them with prejudice, excepting Fields's claim for illegal search and seizure, which should be dismissed with prejudice until the conditions of *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) are met.

## IV.    **Right to Object**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: May 17, 2023.

_____
**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**